Thank you, Your Honor. I represent Starline Tours of Hollywood, and based on your comment, I will reserve five minutes of my time for rebuttal on a watch the clock. The dispute before you, Your Honor, arises from a partnership gone bad between my client, Starline Tours of Hollywood, I'll refer to them as Starline, and TMZ, which is part of the Warner Brothers Group TV tabloid show. The two parties enjoyed a good relationship for a while as partners. They came together to create a new tour of celebrity homes in Los Angeles and successfully operated it as a joint venture for five years until the relationship fell apart for all the reasons that in the lengthy briefs, and I apologize for the lengthy briefs, were submitted to you, so I won't belabor that, and I know we're late in the day, so I'll try to focus my arguments. We're here because the arbitration that the parties agreed to go to and submit their dispute for resolution ended up not being a fair and even playing field as Starline has presented in its position. We all recognize that arbitration is now a very popular and often used mode of dispute resolution, and I think we all want to have at least a level playing field when we're in that forum versus the court, which we accept as being a level playing field. What has happened in this case, Your Honor, is it's equal to if you go to arbitration, assume it's a card game and the cards are stacked against somebody who shows up more often than somebody else, no one wants to play that game, so that's what brings us here today. The Supreme Court long ago actually established a rule that speaks to why the arbitrators need to disclose matters that may be of importance to the participants in arbitration. The Supreme Court in the Commonwealth Codings Corporation versus Continental Casualty Company, 393 U.S. 145 at page 149, stated that where the arbitrator fails to disclose to the parties any dealings that might create an impression of possible bias, then vacature would be warranted. And that is a broad and impressive guideline for arbitrators to follow, and Monster Energy case by this circuit affirmed that belief and that mandate in its decision, which brings us to the table here today to see if the district court applied the Monster standard to the case at hand. In this particular case, Your Honor, the arbitration took place at JAMS, which was the same entity arbitral forum that was involved in the Monster case. Same standard boilerplate disclosure was made at the beginning, and the case proceeded through its normal process of being arbitrated and ended up with the district court. When Monster was issued, it was just briefly one day or so after the district court had entered its judgment. So Starlight and my client brought a Rule 59 motion based on the change in the circumstances of the law and the mandate of the disclosures by arbitrators to the district court's attention. The district court took that issue into account, accepted that Monster needed to be analyzed. Unfortunately, the district court did not apply the inquiry test that was established by Monster correctly, as we have contended here. The court took the non-disclosure of ownership interest by JAMS, despite Starlight's request, as tantamount to an actual disclosure of non-ownership. The Monster Energy case contemplated a two-part test that if there is evidence of ownership of an arbitral entity by the arbitrator, that could establish bias and, you know, all that goes with it. The district court said, in this case, the letter that was submitted by JAMS declining to disclose ownership of the arbitrator was tantamount to a deference that that meant there was nothing to disclose. And, Mr. Mitchell, all the disclosures are pretty straightforward. Do you have ownership? Yes or no? That would have been the answer. But JAMS dodged the issue and did not disclose. And the district court, unfortunately, accepted that and shifted the burden to Starlight to produce information that was in the possession of the arbitrator that was not disclosed to it. Starlight asked... What's the exact remedy you're seeking? That entire arbitration award should be vacated or that JAMS should disclose whether the arbitrator had any interest in JAMS ownership? Well, I guess one would lead to the other. I would imagine, as you asked, if the disclosure had been made and there was ownership, then the arbitration award obviously would have to be vacated on that basis. The disclosure was not made. And here we are. So the remedy to fashion, and I understand the court would like to go as narrow as possible on something like this, and presumably that disclosure would have to be made at some point if the case was remanded back for further proceedings that involved JAMS. But because of the other... Counsel, can we order the district court to... I mean, JAMS is not a party here. So, I mean, it'd be one thing if JAMS was a party to send it back and say, JAMS has to issue a disclosure, but that's kind of hard without JAMS being a party. So how would we go about doing something that would give JAMS another shot, or give, I guess, the parties another shot at asking JAMS to... Well, I would submit, Your Honor, if that was the only problem we had to solve, maybe granting of the motion for new trial to allow Starline to then make formal inquiry and compel JAMS to produce that information, submit that information to the trial court, and have an analysis and consideration of that issue would be the proper course. But in light of the other... Just to be clear, you're saying we'd have to send it back and order the district court to have a trial on the issue, or could we do something more narrow than that? Well, I think trial maybe is used broadly here because there was never an actual jury or bench trial of some sort. I think I'm referring there in the context of a hearing, evidentiary hearing, and allowing Starline an opportunity to obtain the evidence that was lacking for which an inference was made without evidence. Okay, that's what I'm trying to get at. How exactly would it happen? Would you go back, and then you'd subpoena it, and the court would wait until it's subpoenaed? Yes, Your Honor. And how come you didn't do that previously? You did ask, but you didn't subpoena, apparently. Because of the timing, Your Honor. The way this thing came about, the judgment was already entered, and there is no procedure to engage in. We asked for a new trial by setting aside the judgment, which would have put us back into a position to ask for discovery from third parties, and that didn't happen. Now, with respect to the point I was making, that there are other problems here that are just as significant as we pointed out in the briefs here, and I'll be very brief about those since you already have them before you. Just to point out, though, that the arbitrator essentially ignored 60 years plus of California law that a partner cannot oust another partner without compensation, even if they want to get out of the marriage, for good reasons and properly. And in this case, Starline presented evidence that TMZ had planned before the technical termination, they called, to take over the very business of the partnership and run it without Starline. And that evidence was presented, including evidence that the same tour was being operated after termination. And the arbitrator manifested disregard of the law by not applying the Supreme Court precedent, and we cited the case of Laff in our brief, Page v. Page, and 67 years of authority that said the partner does not get to basically take the partnership business for free. It's all a matter of compensation. You can do it, but you can't do it for free. The arbitrator in this case didn't cite any case that says the contrary, and said those cases apply only to oral partnerships, not written partnerships. She did not cite any law that would support her position, and merely distinguished the law that was on the books that had to be applied as written. And the case of Comedy Club v. Improv West Associates, 553 F. 3rd, 1277, by this court, actually made clear that that kind of interpretation to make a law ineffective is actually a manifest disregard of the law. So I think the arbitration award itself suffers from that deficiency, as well as the other point about applying an anti-slap statute to strike some of Starline's claims that never saw the light of day to be tried. And that ruling, the motion was made, stopped discovery. The ruling wasn't made until after the arbitration had been completed. No evidentiary presentation, no right to conduct discovery, and that was prejudicial. And it's the award, and the entire process, in our view, was tainted. So we have requested that vacature be complete, not to sever parts that are problematic, because the whole thing, frankly, was not a level playing field to allow us to have a fair and supportable resolution with all these questions that have been raised. And with that, I submit a motion. I have a question for you. Yes, Your Honor. Is there any significance, or what significance, if any, for our decision? Is the fact that the case comes to us on denial of a Rule 59e motion to reopen, as opposed to coming to us on a direct appeal of a decision that refused to vacate like an arbitral award? Your Honor, I appreciate the question. I hope I understand it, but as I think the case has been brought before you, it's from the confirmation of the arbitration award, rejection of the motion to vacate, an entry of a judgment, and then it went to the Rule 59 request, which was denied. So I think the judgment is encompassed within the purview of this court to review, as well as the denial of Rule 59. My question really relates to the standard that we have to follow. In a Rule 59 motion, I think we ask if the district court abused its discretion in denying reopening. But if the case had come directly here, not a reopened matter, but was just a direct appeal, our review would probably not be for abuse of discretion, but de novo, I would think.  I don't know how else I can answer the question, other than in my review of the decisions on arbitration by this court, the court has actually taken care of making sure that an arbitration award is deferential and holds as much as it can. But sometimes it can't, so it's been vacated. So I think that standard of de novo review, as you had mentioned, and all the things that go with it, I agree is intact. In this case, I almost equate it to a jury trial where there is a verdict, there is a judgment, there's a motion for a new trial on whatever grounds, and the error may be pervasive throughout, but I think court has plenary jurisdiction to apply the different standards at different junctures to come to the correct result. So, counsel, I think what Judge Gould may be getting at here, pardon me, Judge Gould, if I'm wrong, but all of the really meaty issues in this case are sort of the monster energy issues. Those are all issues that came, come to us from a Rule 59, because those didn't come up until after, you know, it didn't happen until after the court ruled. And so instead of coming to us as just legal issues that are, you know, our usual direct appeal, those are coming to us as a Rule 59, and therefore the abuse of discretion standard applies. So how does that overlay of the abuse of discretion standard, if at all, affect our view of all this monster energy stuff you're talking about? I admit I'm not the smartest lawyer in the room, so I'm struggling with that. I think if you screw up the law as a district court judge, that is an abuse of discretion. So it really isn't any different. I understand, and I think I'm struggling trying to come up with a disciplined answer that makes some sense, but unfortunately I don't have an answer to give you. I think it just comes in the bailiwick of how it does. Counsel, I'm trying to help you. Hold on a second. I think if the district court got a rule of law wrong, then I think the rule is that that's an abuse of discretion, right? So it's sort of, so the legal issues, I don't think the abuse of discretion probably matters, but I'll be able to talk to Judge Gold more about that. But we'll see if you're, maybe your opponent has a different view, which would be interesting. I appreciate it, Judge. Okay, Mr. Goda, we took you through a lot of your time, but we can still give you three minutes for rebuttal, if you want to plan your time. Thank you, Your Honor. So, Ms. Lee, could you please proceed? Yes, Your Honor, thank you, and good afternoon. May it please the court, I'm Lynette Lee, representing Apelli in this matter, EHM Productions, also referred to as its business name in today's arguments and in our briefs as TMZ. What Starline neglects to mention in its arguments and its briefs is that the arbitration award that it seeks to vacate now was the product of a four-day arbitration hearing, during which time both sides, which are both sophisticated businesses, both represented by counsel, had ample opportunity to present evidence before the arbitrator by way of exhibits and multiple witnesses that were questioned by both sides. As a product of that four-day hearing, the arbitrator prepared a 37-page detailed decision, and that decision was then reviewed and affirmed by a three-person JAMS appeal panel, except for the arbitrator's award of attorney's fees and costs as a result of granting TMZ's anti-slap motion. What Starline also neglects to mention is that this is now its third attempt at seeking vacatur of this arbitration award, using essentially the same arguments but for Monster Energy that is before this court. Can I take you to the time? If you're kind enough to run it quick, and take you to what I think are sort of the meaty, interesting, challenging issue, at least for me in this case. And that is, I mean, we got Monster Energy. It seems like both the majority and the dissent in Monster Energy figured there was going to be some cases that were going to have to be sent back because of it. I mean, they recognized that. They seemed to embrace that. And not the dissent, but the dissent recognized it. The majority embraced that. Didn't shy away from it. And I'm just having trouble with the response from JAMS here, because it seems the district court judge read the response from JAMS as saying, hey, I've got nothing to disclose here. But that's not what JAMS said as I read it. JAMS is specifically relying on the fact that it's already done, quote, no longer has no further jurisdiction. As such, no further disclosures will be provided. So that's the real challenge for me in this case, is that the district court judge's reason for its decision seems to, I'm having trouble seeing how that fits with what JAMS actually said. Sure. And I'm happy to address that, Judge Van Dyke. And let me back up a little bit. And the way I read Monster Energy is really that there are two separate holdings in the case. Number one, this court really just applied an instance of finding evident partiality. And so it held that where the movement seeking vacateur had evidence of, number one, ownership interest in JAMS by the arbitrator, and number two, non-trivial business transactions between JAMS and a party, when that information has not been disclosed by the arbitrator, that constitutes evident partiality sufficient to warrant vacateur. And also, I think what you just said is, in the circumstance where those two things are present, and they're actually true, right, that you're an owner, that your JAMS arbitrator's an owner, and there's enough non-trivial business dealings, whatever that is, and you happen to have the information in your hands, that's when Monster Energy, because somehow you got that information. So if that's true, then it seems to me that JAMS' incentive going forward is to try to keep you from finding that out, right? And that doesn't seem like that's consistent with other language in Monster Energy, which basically is all about letting the parties know. Sure, and I think there's a bit of a tension there because I think, you know, I read Monster Energy as saying going forward for cases where JAMS has jurisdiction and for cases before they've been retained, these disclosures must be made going forward. So I think that's what JAMS thinks, too, because that's what their letter seems to be saying. And I think the folks at JAMS must have all got in a room and thought, man, this is not a good decision for us. How are we going to deal with this? Well, for all cases, we're going to issue this kind of letter, which turns on, is it done or not? But the problem is Monster Energy itself, actually, two things. One is Monster Energy itself actually seems to act like this is going to have some significant and troubling sort of effects on other cases where the statute of limitations has it run. But not just that, but if what you're saying is true, Monster Energy would have come out differently, wouldn't it? Because Monster Energy, the arbitration was over. The court would have said all this stuff and then at the end said, yeah, but the arbitration is over, so it doesn't matter. I don't think the holding would have come out differently, and that's because, again, in that instance, the party had the evidence without needing to, you know, get the disclosure from Jams. Again, there are examples in the case as to how a party might go about getting this information. But, you know, to retroactively apply Monster Energy to all cases that Jams has had in the past really goes against the plain verbiage of the opinion, and it seems unworkable, especially in this instance. You know, we have an arbitration that was handled by Jams two years ago. It's not clear if the arbitrator now is supposed to disclose, you know, for example, if she had ownership interest that she gained six months ago, but not during the pendency of the arbitration. Which way does that cut? And I think it just leads to unworkable results. Well, counsel, I mean, the majority in says, although our dissenting colleague, Judge Breland, raises concerns about the finality of recent arbitral judgments in light of our ruling, that's not a problem because this is only going to matter going forward. No, that's not what it said, right? That's not what they said. They said, yeah, well, that's too bad, but that's the problem with that position. I mean, I don't know that I disagree with you, but it doesn't seem like the opinion leaves that open to it. Well, I read that as meaning, you know, parties such as Starline, where it has an avenue, can now use Monster Energy as grounds for vacateur, again, when they have evidence of these two factors. But I don't think it speaks to what the arbitrator's disclosure requirements are now going to be. You understand, though, that like the problem with that position is that it encourages Jams not to disclose stuff, contrary to, I mean, right? Like if you're a repeat player, you just want people not to know. Again, I mean, I can't speak for Jams, but it seems quite clear to me under the opinion that in all cases that they now have and going forward, these are the things that they need to disclose. Is there, this is another way of asking what I asked our opposing counsel, is there something we can do short of vacating the arbitration award, assuming that Jams didn't make the adequate disclosure? I mean, you look at the Jams' disclosure, I think it's, it doesn't look like they really answered the question. You know, they're being very squirrelly, you know, and maybe they're trying to hide something, or B, maybe their lawyers and lawyers do squirrelly things for no apparent reason other than that's what they do. And it seems it would be a complete waste of resource if it turns out, no, there is no interest here and we vacate the entire arbitration award. Is there an option that we have here, or is it, you know, under Monster, disclosure wasn't made and given this posture, they can make a disclosure and it has to be vacated? Judge Lee, I don't think there is anything that this panel can do. And there's two reasons to that, in my opinion. Number one, again, the onus is on Starline as the one seeking vacateur to pursue these options. They had opportunities, and contrary to what Mr. Gatz has said, you know, certainly if they had sought for a stay on the hearing of the Rule 59E motion to conduct discovery, that was an option, but that wasn't pursued. So, you know, the burden doesn't fall on this court to now give Starline what would effectively be a fourth bite of the apple to uncover something that isn't even there. I had another reason, but I'm blanking right now. What would Starline have to do, just file a subpoena against Jams? I mean, that seems to undercut the whole purpose of arbitration, that you think you have to go to court to get this information. I mean, Jams isn't a public company where you can plumb through SEC files and figure out who owns it. I mean, that's a practical matter. What would a party in arbitration have to do to get that information? I think a subpoena would be appropriate, possibly a FOIA request. You know, Monster Energy doesn't really illuminate on how that party obtained this information, other than that it pursued a subpoena and a motion to compel. So that's certainly one possible avenue that Starline could have pursued but didn't. The other thing I'll mention is that, you know, unlike Monster Energy, where there was some kind of indication already of possible evident partiality given that arbitrator's prior relationship with Monster Energy, there's really nothing here. At no point has Starline pointed to anything in the record suggesting evident partiality by the arbitrator. And so, you know, while I'm of the position that Monster Energy doesn't require the arbitrators to have provided these subsequent disclosures, there's just no basis for this needle in the haystack. Because, counsel, we don't know whether there's any basis or not. What we know is that Jams was asked, and Jams gave a squirrelly answer. And I think it's pretty obvious, to me at least, why they gave that squirrelly answer. I don't think it probably had anything to do with this case. I think they must have made a decision that in all of their cases, in order to try to mitigate the damage caused by Monster Energy, they'd give the identical answer, which is the case is over, we don't have jurisdiction, we're not answering it for that reason. So I think their answer is literally a non-answer in this case, as far as this case is concerned. But I do, and I think, so if we sent it back and we said we can't do that, that doesn't work. I, you know, Jams is a bunch of retired judges. I don't think that they'll probably thumb their nose at that. And then I guess they could follow it up with Sofina if they did decide to thumb their nose at that. But I guess the issue that's kind of challenging to me is I think the odds that the main arbitrator here, the woman that arbitrated it, not the panel, that she is an owner is, you know, less than 50%. But I guess what I'm trying to figure out is I think Monster Energy probably applies to all four arbitrators, right? So now all of a sudden, statistically, it's a lot harder for not one of them at least to have been an owner and therefore trigger Monster Energy. So that's, do you have any thoughts on whether or not, on why the three appellate panel members might not fall within the ambit of Monster Energy? You know, I'm fighting against myself because my position is that I don't read Monster Energy as requiring these disclosures. But, you know, setting that aside, I think it would apply to the appeal panel at JAMS as well as the arbitrator, which, again, kind of speaks to how untenable the solution is to make this a retroactive requirement for supplemental disclosures on these two points. Yeah, that was Judge Freeland's concern, which in a sense, I know it's tough. The other point I will make, Your Honors, is, you know, I recognize, you know, Judge Van Dyke, your disagreement with the district court's ruling or analysis of the supplemental disclosures provided by JAMS. But, again, this is, that would be on a clearly erroneous standard of review given the court's review, the district court's review of facts. You know, again, it would only be suitable for reversal if it's a completely illogical reading. And I think the judge's reading of these, this quick sentence is absolutely logical and plausible. And simply because there is another interpretation of that shouldn't warrant reversal. I see that I'm about to run out of time. I'm happy to answer any additional questions, but I will not belabor the arguments and points that we have raised in our briefing. I have no questions. Thank you, Your Honor. Judge Van Dyke, hearing none, let Mr. Goddard hear for both. Thank you, Your Honor. In answering the question that Your Honor had asked Judge Gould, I don't think I could squeeze my brain enough to come up with a quick enough answer. But between the conversation with the court and opposing counsel, I got a chance to look at what the remedy that Monster actually put on the table is and why that should not be applied here. In that case, Monster held that the arbitrator's failure to disclose the ownership interest in Jams, given its non-trivial business relations with Monster, creates a reasonable impression of bias and supports the architecture of the arbitration award. No less here, because Jams' letter, anyone can read it. It's not an answer. So that's a refusal to disclose even when they had an opportunity. So we're not guessing. Whatever the reasons may have been, we're guessing. But they did not disclose the interest. Therefore, they have not made the required disclosure. And this is a matter of – and I'm a trial lawyer by nature. I end up here only when I have done badly. This is – Monster Energy was then failing to disclose when they actually did have the – Here, we don't know whether they have an ownership interest or not. We know they failed to disclose it. But I guess you could find out maybe whether or not they actually had an ownership interest. Well, that's what I was getting at. I 100% agree with you, Judge, that we don't know. But I'm going back to the trial business of our part of our business. We deal with burdens down here in the trench. I have a burden. The other side has a burden. The arbitrator has a burden. Everybody has a burden. The burden of disclosure is on the arbitrator. Now, there's not a whole lot you get to say about arbitrations at all that matters when you're a party who has not done well. You know, you've got the mountain to climb. But the one mountain that the other side has to climb is if they don't make the disclosures. That's where we make any difference. So to hold us tight on the one side of the ledger to say you've got a narrow path for reversing an arbitration award and all the rules that goes with it, I think equally we always expect the refs to make the same call at both ends of the floor. So if an arbitrator, like Jams, refuses to disclose when it had an opportunity, why should they get deference at all? I think the answer is they did not disclose anything. They failed to disclose the ownership issue. Whether it is true or false, that's a foul on them. They didn't do it. So the arbitration award gets vacated on exact similar rounds as Monster because the same boilerplate arbitration disclosure was made in Monster as was here. So that's the point I'm talking about in terms of the remedy you fashioned that doesn't really need that kind of a struggle if we play it, again, evenly for both sides. If the arbitrator has the burden of disclosure, well, disclose it. Why do people have to go chase and subpoena and do all these things? I think that's unbecoming again. And unless you have another question, I don't know how much of my time I used, but I'd like to make one more point. Please go ahead. The one thing that's not to be forgotten in all the procedural things that we do is the arbitration award that was rendered and its core ignored 60-plus years of California law that says a partner that's ousted is not ousted without compensation. So TMZ here has been our contention all the way through and took the same business and the next day sold the same tour, same tickets, same cookies. And that it was not allowed to do and the arbitrator herself recognized this very thing in the decision when she actually said the agreement does not contemplate either party taking over the TMZ Starline celebrity bus tour for itself. And then she goes on and says, and that did not happen. That's in ER 349. It's the last paragraph of that page. However, the evidence and the law was that TMZ did take the same tour, ran the same tour, planned to do the same thing without Starline and did it without compensation. And the case from the Supreme Court left all the way down, say, fine, you can't do it without compensation to the agreed partner. And with that, I submit. So I want to thank counsel for both sides for their very stimulating arguments on this tough case. You probably win the prize for the toughest case of the day if not the century. But thank you. Thank you. Very interesting. And the court will submit the case and we'll go to work on the issues and you'll hear from us in due course. So thank you both. Appreciate it. Thank you.
judges: Gould, Lee, Vandyke